IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MONICA BISHOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CIV-20-656-SM |
| ANDREW M. SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Monica Bishop (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 16, 17.

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings arguing the ALJ's residual functional capacity assessment[1] (RFC) failed to include limitations from the state agency consultants' persuasive opinions. Doc. 18, at 3. After a careful review of the

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

record (AR), the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).[2]

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

---

[2]   Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the AR will refer to its original pagination.

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy.

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 18-25; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since December 27, 2016, the application date;

(2) had the following severe medically determinable impairments: osteoarthritis, depression and post-traumatic stress disorder;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the physical residual functional capacity to perform light work except she cannot reach overhead with the bilateral upper extremities and she can interact with the public on a superficial basis;

(5) could perform her past relevant work as a fast food worker, DICOT 311.472-010, and a maid/housekeeper, DICOT 323.687.014; and thus

(6) had not been under a disability since December 27, 2016.

*See* AR 20-25.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

## B. Issue for judicial review.

Plaintiff asserts the ALJ's RFC assessment neglected to include, without explanation, certain nonexertional limitations based on the state agency consultants' persuasive opinions. Doc. 18, at 3. She maintains that she could only perform simple and some complex tasks and that she was limited in her interactions with others (coworkers, supervisors, and the public). *Id.* at 7-9. And Plaintiff argues, the ALJ failed to explain why he did not include these limitations when questioning the vocational expert or in the RFC assessment. *Id.* at 7-8.

### 1. The ALJ's findings.

With respect to the state agency consultants' opinions, the ALJ found:

The undersigned finds the opinions of State agency consultants, Gary Lindsay, Ph.D. and Stephen Drake, Ph.D. persuasive. Both doctors opined the claimant could understand, retain and perform simple and some complex tasks on a sustain[ed] basis, could adjust to mental demands of the work place and carry out simple instructions, but *would have difficulty with interpersonal relations and would perform better in jobs with limited requirements to interact with co-workers* (Ex. 2A/11, 4A/13). They also opined the *claimant would not interact well with the public,* but would be able *to work with normal supervisions* and in a setting where the claimant could *work mostly alone* (Ex. 2A/11, 4A/13). Both doctors' opinions are supported by their review of the claimant's medical records and notes from her mental health providers. Their opinions are consistent with the medical evidence generally observing the claimant with intact memory, able to follow directions, and fair insight and judgment (Ex. 3F/6, 6F/5, 10F/53). *These opinions are also consistent the records showing the*

5

> *claimant's history of problems interacting with others at work* and her family (Ex. 3F/1-2, 15, 21, 6F/7, 30, Hearing Testimony).

AR 25 (emphasis added).

> As to Plaintiff's interacting with others, the ALJ found:

> the claimant has a moderate limitation. Here, the claimant alleged that she *has difficulty getting along with others and dealing appropriately with authority* (Ex. 7E/6-7). The claimant also reported she could not go out alone (Ex. 7E/4), but later reported she did not need anyone to accompany her when she went places (Ex. 7E/5). In addition, the claimant reported to being able to shop, take public transportation, and spend time with others (Ex. 7E/4-5, 6F/10, 22). The claimant further reported challenges at her previous employment, *responding with violence to criticism from others, and always feeling like someone is trying to hurt her* and wanting to see her fail (Ex. 7E/7, 3F/21, Hearing Testimony). Finally, *the medical evidence shows that the claimant was described as pleasant and cooperative and appeared comfortable during appointments* (Ex. 3F/19, 9F/6, 10F/41). Thus, the undersigned finds a moderate limitation in this area.

*Id.* at 22 (emphasis added).

### 2. The DICOT's application here.

The ALJ determined Plaintiff could perform her previous jobs of "fast-food worker" and maid/housekeeper as they were customarily performed. *Id.* at 48-51. With respect to Plaintiff's arguments, the DICOT provides information on the requirements of various jobs including a description of what a person does in performing a particular job. The DICOT also provides a more general description of various components of the job worker functions in relation to "Data," "People," and "Things." The worker function of "People"

6

describes the degree of interaction with other people and receives a rating using an 8-point scale with 8 being the least interaction and 0 being the most interaction. The job of fast-food worker earned a 7 for the "People" function, with 8 being the least interaction with people. DICOT 311.472-010, 1991 WL 672682, at *1, and noted that "Serving" was "Significant." The job is also unskilled with a reasoning level of two, which requires the ability to "[a]pply commonsense understanding" and "carry out detailed but uninvolved written or oral instructions." *Id*. As the Commissioner argues, brief and minimal social interaction is a component of this job. Doc. 22, at 14.

The DICOT job description for housekeeper/cleaner mentions no contact with the general public, beyond "render[ing] personal assistance to patrons." DICOT 323.687-014, 1991 WL 672783, at *1. The DICOT description reads:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. *Checks wraps and renders personal assistance to patrons.* Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

*Id.* (emphasis added). As the Commissioner points out, the housekeeper might exchange pleasantries with a guest, so the personal assistance to patrons is in

7

the context of cleaning rooms and halls and restocking rooms. This job lists the interaction with People at an 8, and that "Taking instructions-Helping:" is "Not Significant." *Id.*; *see Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (a DICOT entry that describes the amount of "Taking Instructions" required as "Not Significant" is consistent with "superficial contact with supervisors and co-workers"). The housekeeper/cleaner job is unskilled with a reasoning level of one.

### 3. Substantial evidence supports the ALJ's decision.

Plaintiff accurately depicts Dr. Lindsay's and Dr. Drake's opinions. Doc. 18, at 3-4. Dr. Lindsay noted Plaintiff had "difficulty with interpersonal relations," "[w]ould perform better in jobs with limited requirements to interact with coworkers," "would not interact well with the public" and could "carry out simple instructions." *Id.* at 3 (quoting AR 64). The ALJ found Dr. Drake made near identical conclusions. AR 25. Plaintiff also cites her hearing testimony, where she testified she "just lashes out" when she is "off [her] meds." Doc. 18, at 5 (quoting AR 41-42). She described threatening her manager at a fast-food job, and throwing a hamburger at a colleague at another job. AR 41-42.

Plaintiff argues the ALJ's RFC assessment neglected to include limitations to simple and some complex tasks, or to interaction with coworkers,

supervisors, and the public. Doc. 18, at 7-9. Similarly, she maintains, she declined to include these in the hypothetical questions he posed to the vocational expert. *Id.* at 7.

Plaintiff contends that Drs. Lindsay and Drake required Plaintiff to work alone and with no interaction with the public. She argues that the fast-food worker job required dealing with people at a "significant" level and the housekeeper job required giving personal assistance to patrons and take instructions/helping. *Id.* at 8. She also questions whether giving assistance to patrons exceeds the RFC's superficial interaction with the public limitation. *Id.* at 8-9.

Plaintiff's arguments fail. In considering her mental impairments, the ALJ considered Plaintiff's medical history and her testimony. AR 22. He found moderate limitations in Plaintiff's ability to interact with others and in concentrating, persisting, or maintaining pace. *Id.* He found mild limitations in her ability to understand, remember, or apply information and in her ability to adapt or manage herself. *Id.* at 21-22. He also found that Plaintiff "participates in medication management, reporting stable moods and being satisfied with her current medications[,] suggest[ing] that her medications have been relatively effective in controlling [her] symptoms." *Id.* at 24 (internal citations omitted). Plaintiff also testified she does not get violent when she is

9

adhering to her medical regimen. *Id.* at 40.[3] The ALJ found Plaintiff's subjective complaints "not entirely consistent" with the medical evidence of record, and thus discounted them. *Id.* at 24. Plaintiff does not challenge this conclusion.

In crafting the RFC assessment, the ALJ considered the entire record. *Id.* at 23; *see also Wall*, 561 F.3d at 1070 (explaining "[w]here, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word" (citation and internal alterations omitted)). The ALJ cited Plaintiff's mental health medical history, noting her medical visits "generally" show a normal mood, fair insight, and judgment. AR 24. And she reported being satisfied with her current medication, and reported stable moods when in medication management, "suggest[ing] that her medications have been relatively effective in controlling [her] symptoms." *Id.* And, both doctors indicated she could work with "normal supervision" and mostly alone. *Id.* at 64, 80.

---

[3] As noted, the fast-food worker job does have significant serving of people, but rates the second-lowest "People" score over all. DICOT 311.472-010, 1991 WL 672682, at *1. And the maid/housekeeper has the lowest possible "People" rating. DICOT 323.687-014, 1991 WL 672783, at *1.

The ALJ relied on the vocational expert's testimony, which the expert testified was consistent with the DICOT. *Id.* at 25, 48-49. As to Plaintiff's argument about the ALJ's failure to include Plaintiff's limitations in questioning the vocational expert, the ALJ's hypothetical included a limitation to superficial interaction with the public. *Id.* at 49. In response, the vocational expert stated Plaintiff could perform both her previous jobs of fast-food worker and maid/housekeeper, with possible restrictions, given her overhead reaching limitation. *Id.* The vocational expert "testif[ied] from the [DICOT]" and would alert the ALJ to any differences. *Id.* at 48. He identified none. *Id.* at 48-51. Plaintiff's hearing counsel did not delve further into the issues Plaintiff now raises. *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) ("[T]he ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored.") (citation omitted). Substantial evidence supports the superficial interaction limitation.

And both of the jobs the vocational expert identified are unskilled. This means they involve primarily working with objects or things, not people. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(g) ("[T]he primary work functions in most unskilled occupations relate to working with things (rather than data or people)."); SSR 85-15, 1985 WL 56857, at *4 (1985) (stating that unskilled

11

jobs "ordinarily involve dealing primarily with objects, rather than with data or people"); *Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2006) ("Even though [the state agency psychologist] noted marked limitations in [the claimant's] ability to . . . interact appropriately with the public, unskilled work does not require these abilities[.]"). Substantial evidence supports the ALJ's conclusions with respect to Plaintiff's ability to engage in superficial interaction with the public.

Finally, Plaintiff argues, without much follow-up, that the ALJ omitted her limitation to simple and some complex tasks from the RFC assessment and in his questioning of the vocational expert. Doc. 18, at 7. As noted, the two jobs are unskilled. As the ALJ's hypothetical posed, Plaintiff has an eleventh-grade education. AR 49. That places her into the "limited education" category. *See* 20 C.F.R. § 416.964(b)(3). Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow one to do most of the more complex job duties needed in semi-skilled or skilled jobs. *Id.* The ALJ found only mild limitation in the ability to understand, remember, or apply information, and that she could take instructions from healthcare providers, and had fair insight and judgment. AR 21-22. Substantial evidence supports the ALJ's conclusion Plaintiff could perform the identified unskilled jobs.

Substantial evidence supports the ALJ's RFC assessment and his findings. *See Lately v. Colvin*, 560 F. App'x 751, 755 (10th Cir. 2014) (holding substantial evidence supported the ALJ's decision where "the ALJ asked the vocational expert [] whether [plaintiff] could perform her past relevant work with her restrictions, and the [vocational expert] indicated that she could;" the vocational expert also "specifically stated that these jobs comported with the descriptions contained in the D[IC]OT").

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 27th day of April, 2021.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE